MARTIN V. COOK ET AL. v. WILLIAM DINSMORE ET AL.

1. JUSTICE'S DOCKET NEED NOT CONTAIN MORE THAN DATE OF THE WRIT AND RETURN.

Under section 594, Rev. Stat., justice of the peace is required to record on his docket, the date of the writ and the time of its return. He is not required to copy the whole return.

2. DEFAULT JUDGMENT NOT INVALID BECAUSE DOCKET DOES NOT SHOW THAT SUMMONS FULLY ENDORSED.

Where the transcript shows that the defendant did not appear, and that judgment by default was rendered against him, such judgment will not be held to be invalid for want of an entry upon the docket showing that the summons was indorsed with the amount sued for, as required by law.

3. UNLESS OTHERWISE PROVED, PRESUMED THAT JURISDICTION WAS OBTAINED.

In the absence of proof to the contrary, it will be presumed that the summons was properly indorsed, and that the justice had obtained jurisdiction of the person of the defendant.

**4. WHERE JUSTICE HAS JURISDICTION OF THE SUBJECT MATTER, IRREGULARITIES NOT OBJECTED TO ARE WAIVED.**

If the case was one in which the justice had jurisdiction of the subject-matter, then any error or irregularity occurring on the trial would not render the judgment void, but only voidable, and the defendant, by not objecting in the mode and within the time prescribed by law, will be deemed to have waived such error or irregularity

**5. WANT OF ENDORSEMENT "NO GOODS" ON RETURN DOES NOT MAKE LEVY INVALID.**

Where an execution is issued to the sheriff of another county, and the clerk's execution docket shows it was returned indorsed showing the date of the receipt of the writ by the sheriff, and that upon the date of its receipt it was levied upon real estate, describing the same, and then returned, and if such execution be lost, and it be made to appear in an action to enforce the levy by a sale of the property levied upon, that the execution debtor had no goods or chattels at the time of the levy, such levy will not be set aside and held for naught for lack of an entry on the execution docket showing an indorsement upon the execution of "no goods."

**6. RETURN MAY BE AMENDED IN ACCORDANCE WITH THE FACTS.**

In such case the sheriff, if still in office, would be permitted to amend his return in accordance with the facts. If the sheriff who made the levy be no longer in office, a court of equity will hold that as done which should have been done for the purpose of upholding the levy

**7. PROPER ENTRY ON FOREIGN EXECUTION DOCKET IS NOTICE OF MATTERS THEREIN CONTAINED**

In such case, if the sheriff receiving the writ and making the levy, make the proper entry upon his foreign execution docket in every respect as required by section 1212, Rev. Stat., such entry will be notice to subsequent purchasers and creditors of the matters contained therein, and such levy will be good as against them.

**8. LEVY ON LAND NOT LOST IF ENFORCED BEFORE DORMANCY.**

A levy on land is not lost because not followed up with diligence, if enforced during the five years before dormancy of the judgment, and as against subsequent purchasers and creditors such levy may be enforced at any time until the judgment becomes dormant.

**9. QUIT CLAIM DID NOT CONVEY EQUITABLE RIGHT OF SUBROGATION.**

S., the execution debtor, derived title to the real estate levied on from J. While J. was owner, he mortgaged to De F. After the levy of the execution, De F. commenced an action to foreclose his mortgage, but did not make C., the execution creditor, a party. The mortgaged property was sold upon a decree in favor of De F., and sheriff's deed made to R. The purchaser, R., quit claimed his legal estate to P., who conveyed by deed of general warranty to D. D. claims to be subrogated to the rights of R., the purchaser at sheriff's sale, and that hence he has an equitable assignment of the mortgage lien of De F., which should have priority over the lien of C., the execution creditor. Held: The quit-claim deed of R. conveying his legal estate, did not convey his equitable right of subrogation to P. P. conveyed to D. no greater estate than he was possessed of.

**10. ONE WHO HOLDS TITLE BY QUIT CLAIM IS NOT A BONA FIDE PURCHASER.**

A person who holds real estate by virtue of a quit-claim deed only, from his immediate grantor, whether he is a purchaser or not, is not a *bona fide* purchaser with respect to outstanding and adverse equities and interests shown by the records, or which are discoverable by the exercise of reasonable diligence in making proper examinations and inquiries

**11. A QUIT CLAIM TITLE IS A PRESUMPTION OF UNCERTAINTY.**

In such case, the grantor will be presumed to have made a quit-claim deed because he knows of the outstanding equities, and because he does not wish to bind himself to defend against them by making a deed with covenants of warranty; and the grantee will be presumed to have accepted a quit-claim deed because he has knowledge of the outstanding equities. Grantor and grantee will be presumed to have fixed the purchase price in view of the uncertainty of the title. (*Contra.* see Morris v. Daniels, 35 O. S., 406.)

## Error to the Court of Common Pleas of Putnam county.

The plaintiffs say in the petition that they are executors of Michael Cook, deceased.

Said Michael Cook, on March 7, 1884, recovered a judgment before a justice of the peace of Allen county, Ohio, against John Stephenson and Charles C. Woodward, for $257.69 and costs, which judgment was to bear interest at eight per cent

On February 23, 1886, a transcript of said judgment was filed in the office of the clerk of the court of common pleas of Allen county, Ohio, and by said clerk duly entered on the execution docket.

On March 10, 1886, an execution was issued on said judgment to the sheriff of this county, who, on March 11, 1886, duly entered the same on his foreign execution docket, and, on said day, for want of goods and chattels, levied the same on inlot 32 in Columbus Grove in this county as the property of John Stephenson, one of said judgment debtors, and the same then became and now is a valid and subsisting lien on said inlot.

Said sheriff duly copied into said foreign execution docket a full description of said property so levied upon by him, together with his return at the time the same was made. Said execution was, on March 11, 1886, by said sheriff, duly returned to said clerk of Allen county.

No part of said judgment has been paid.

The defendants, William Dinsmore, Huldah Pletcher and Jerome Elliott, claim some interest in the property, and are asked to set up the same.

Plaintiffs ask that the amount due them may be paid, the premises ordered sold, and the liens marshalled.

Jerome Elliott, for answer, admits plaintiffs are the executors of Michael Cook, and that he, Elliott, has a lien on said real estate, and denies all the other allegations of the petition.

For cross-petition he says that on March 18, 1889, the defendant, William Dinsmore, being the owner in fee-simple of said inlot, for a valuable consideration made his several promissory notes to Huldah Pletcher, and secured the same by mortgage on said inlot; that said mortgage was duly recorded, and afterwards said Huldah Pletcher, for value, transferred said notes and mortgage to said Elliott, and he is now the *bona fide* owner thereof. For amendment to his answer he says, said John Stephenson derived title to said inlot from one Kirk Johnson. That while Johnson was the owner of said lot, he mortgaged the same to S. F. Deford, to secure the sum of $400.00.

That on March 5, 1886, said Deford commenced an action to foreclose his mortgage, and at the May term of the court of common pleas a decree was entered foreclosing said mortgage, and ordered said premises to be sold. Said inlot was offered for sale and bid in by Deford. He assigned his bid to William Roberts; the sale was confirmed and a deed made to Roberts. That plaintiffs' lien was acquired during the pendency of said action.

Plaintiffs for reply to the original answer of Elliott, says: Said Dinsmore's notes and mortgage were made and assigned while plaintiffs' lien was in full force, and for reply to the amendment to Elliott's answer, they deny that Deford commenced his action on March 5, 1886, and they say, said action was not commenced until March 15, 1886, which was after the execution on plaintiffs' judgment was levied upon said inlot, and that said Michael Cook, who was then in full life, was not made a party to said action.

William Dinsmore denies the allegations of plaintiffs' petition. He says that on March 13, 1889, Huldah Pletcher and her husband, by deed of general warranty, conveyed said inlot to him. For answer to the cross-petition of Elliott, he says he denies all the allegations of said cross-petition. He says he executed the notes and mortgage, set up in said cross-petition, as part of the purchase price of said inlot. He says if plaintiffs recover on said lien, the same should be deducted from the note and mortgage executed to Pletcher.

Huldah Pletcher says she and her husband conveyed said inlot by deed of general warranty to said William Dinsmore.

Upon the pleadings and evidence, we are to determine the rights of the parties.

Some questions arose upon the admissibility of certain evidence offered by plaintiffs. We admit:

The transcript and judgment from docket of the justice.

The certificate of the clerk of the court, showing that the justice who certified the transcript and the justice who rendered the judgment were justices.

The evidence of D. H. Tolan, and the records in his office, showing the filing of the transcript, its entry upon the execution docket, the issuing and return of the execution thereon; that search was made for said execution, and that it was lost; that no payments appear upon the execution docket.

The evidence of John Stephenson, to the effect that he is the John Stephenson against whom the judgment was recovered; that he was sued; that he has not paid the judgment or costs, and that he had no personal property at the time of the levy.

Also, the evidence of Martin V. Cook, one of the plaintiffs, that the judgment has not been paid to him, nor so far as he knew, to his father

Also, the evidence of Crall that Charles C. Woodward had no personal property in Putnam county at the time of the levy.

Also, the record in the case of Deford v. Johnson; the deed from Johnson to Stephenson; also, the record of quit-claim deed from Roberts to Pletcher; also, record of deed from Gardener to Johnson; also, the sheriff's foreign execution docket of this county, pp. 38 and 39.

Also, the evidence of Peter Wannamaker; also, the deed from Wannamaker to Roberts. The deed from Pletcher to Dinsmore.

It is conceded and proved that the action of Deford against Johnson was commenced March 15, 1886, which was after the levy by Wannamaker, and that Michael Cook was not a party to the action.

BEER, J.

It is objected against the validity of the judgment that the transcript shows it was taken by default, and the return upon the docket does not show that the amount claimed to be due was indorsed thereon.

There are two answers to this.

1. Section 594 only requires the justice to record on his docket the date of the writ and the time of its return. He is not required to copy the whole return. In the absence of the writ, we will presume it was properly indorsed.

2. The summons was served, and the justice thereby acquired jurisdiction of the persons of the defendants. The justice then had jurisdiction to proceed, and if the judgment was improperly taken it was only error or irregularity, and hence not void, but only voidable, and the parties, by not objecting within the time prescribed by law, waived the error or irregularities. Sheldon v. Newton, 3 O. S. 494, 499.

It is next argued that the alleged levy by the sheriff of Putnam county was so irregular, and the return so defective, that the judgment creditor acquired no lien.

The execution itself is lost.

The execution docket of the court of common pleas of Allen county shows the following:

"Execution to Putnam county, March 10, 1886. Returned indorsed: "Received this writ, March 11, A. D. 1886, at 8 o'clock A. M., and on the same day levied on the following real estate, to-wit: Inlot number 32 in the town of Columbus Grove, Putnam county, Ohio; then returned this writ this day. Fees, $1.50. Peter Wannamaker, Sheriff."

There is no indorsement of "no goods" in the return. Hence, it is claimed the officer took nothing by the levy.

Sec. 5383 reads: "The officer to whom a writ of execution is delivered, shall proceed, immediately, to levy the same upon the goods and chattels of the debtor; but if no goods and chattels can be found, the officer shall endorse on the execution the words "no goods," and forthwith levy the same upon the lands and tenements of the debtor which are liable to satisfy the judgment."

Is it the indorsement of "no goods," or the fact that no goods and chattels can be found, which justifies a levy on lands and tenements?

The officer is bound to make a levy if he can find property of the debtor within his county; goods and chattels first, and if no goods and chattels can be found, then he must levy upon lands and tenements. Such is the command of the writ. Sec. 5381.

A levy will not be set aside for a mere mistake of the officer in making his indorsement on the execution. That a defect in the return may be supplied by parol evidence is unquestionable.

It has been permitted in this state repeatedly.

In this case, it is shown beyond question that the officer made search for goods and chattels, and found none; and further, that the judgment debtor had no goods and chattels in this county.

Sec. 1212 reads: "There shall be kept in the office of the sheriff of each county a foreign execution docket, to be furnished at the cost of the county, in which docket the sheriff shall, on receipt by him of any execution, order of sale or other process issuing from any court of any county of the state, other than that in which he resides, make an entry of that date of such writ, when received by him, from what court and county issued, the date and amount of judgment or decree; also, copy in such book the full description of the property and real estate which he levies upon or offers for sale, the same as is endorsed upon or contained in such writ; also, copy into such book his return on such writ, when he makes the same, * * * and shall make a direct and reverse index of each case so entered; and such entries so made shall be notice to subsequent purchasers and creditors of the matters contained therein."

The entry of the sheriff on his foreign execution docket fulfills every requirement of sec. 1212, and hence is notice to subsequent purchasers and creditors of the matters contained therein.

As the entry contains all the law requires, the levy is good as against them.

If the return to the clerk in Allen county is defective, the execution debtor only could ask to have the levy set aside; and plainly, he is not prejudiced by the failure to indorse "no goods" if it be conceded that the officer made no such indorsement, for he had "no goods;" and the law will make the indorsement, if any one, in a regular way, should undertake to have the levy set aside.

We conclude, therefore, that the levy is binding upon the subsequent purchasers and creditors.

It is next claimed that the plaintiffs have no lien, because they have not followed up their levy with diligence.

Sec. 5375 reads: "Such lands and tenements within the county where the judgment is entered, shall be bound for satisfaction thereof from the first day of the term at which judgment is rendered; but judgment by confession and judgments rendered at the same term at which the action is commenced, shall bind such lands only from the day on which such judgments are rendered; and all other lands, as well as goods and chattels of the debtor, shall be bound from the time they are seized in execution."

Sec. 5380 reads: "If execution on a judgment rendered in any court of record in this state, or a transcript of which has been filed as provided in section fifty-three hundred and seventy-seven, be not sued out within five years from the date of the judgment, or if five years intervene between the date of the last execution issued on such judgment and the time of suing out another execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor."

Five years did not intervene between the date of the execution and the commencement of the action. As said by Longworth, J., in Morgan v. Kinney, 38 O. S. 614, "from the time that a valid levy is made the land is in legal sense seized in execution—that is, rendered liable for its satisfaction."

The next question to be determined is the priority of the liens.

Mrs. Pletcher bought by quit-claim deed, and by the narrowest kind of a quit-claim deed. The grantor simply conveys his legal estate. Dinsmore and Elliott held by the same title,—their rights rise no higher than hers.

In the well-considered case of Johnson v. Williams, 37 Kan. 179, found in 1 Am. State Rep. 247, it is decided that

"A person who holds real estate by virtue of a quit-claim deed only, from his immediate grantor, whether he is a purchaser or not, is not a *bona fide* purchaser with respect to outstanding and adverse equities and interests shown by the records, or which are discoverable by the exercise of reasonable diligence in making proper examinations and inquiries."

There is good reason for this conclusion. Where there are outstanding and adverse equities, the grantor must be presumed to make a quit-claim deed because he knows of them, and because he does not wish to bind himself to defend against them by making a deed containing covenants of warranty. The grantee will be presumed to accept a quit-claim deed under such circumstances because he has knowledge of the outstanding equities. Grantor and grantee will be presumed to have fixed the purchase price in view of the uncertainty of the title.

Mrs. Pletcher and Elliott claim that under sec. 5411, and in equity, the lien of Deford was assigned to them by reason of the defect in the title conveyed at the judicial sale. No such right or equity is conveyed in the quit-claim deed of Roberts to Pletcher, and there is no evidence that she paid full value for the property, but the presumption is she paid for the defective title conveyed to her.

The court find the equities of the case for the plaintiffs.

There is due them on their judgment, and their judgment for costs, $———.

Decree that unless the same be paid within ten days, the premises be sold and the proceeds distributed as follows:

1. The judgment for plaintiffs and their judgment for costs.

Vol. III C. C.  13

2. The costs of this action.

The mortgage of Dinsmore to be reduced and cancelled to the extent of the foregoing.

If there be not sufficient of the proceeds to pay the costs, then that Hulda Pletcher pay the same.

Balance, if any remain, to be paid to Dinsmore.

Cable & Parmenter and Bailey & Bailey, for plaintiffs.

Sheets & Ogan, Sutton & Thomas and A. V. Watts, for defendants.